## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY STEER, individually and as the representative of a class of similarly situated persons, and on behalf of the Charles Stark Draper Laboratory, Inc. Retirement Plan for Draper Employees and the Charles Stark Draper Laboratory, Inc. Supplemental Retirement Annuity Plan, <br><br> Plaintiff, <br><br> v. <br><br> THE CHARLES STARK DRAPER LABORATORY, INC.; THE RETIREMENT PLAN OVERSIGHT GROUP; and JOHN and JANE DOES 1-10, <br><br> Defendants. | Civil Action No. 24-CV-13105-AK |

## <u>MEMORANDUM AND ORDER</u>
## <u>ON MOTION TO DISMISS</u>

**ANGEL KELLEY, D.J.**

Plaintiff Barry Steer brings this suit on behalf of himself, a class of similarly situated persons, and two retirement plans.  Plaintiff alleges that Defendants, The Charles Stark Draper Laboratory, Inc. ("Draper"), The Retirement Plan Oversight Group ("RPOG"), and John and Jane Does 1-10, breached their fiduciary duties in violation of the Employee Retirement Income Security Act ("ERISA").  Defendants brought the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of statutory and constitutional standing along with a Motion for More Definite Statement.  For the following reasons, Defendants' Motion to Dismiss and for a More Definite Statement [Dkt. 11] is **DENIED**.

# I.    BACKGROUND

Unless otherwise noted, all facts come from Plaintiff's Complaint [Dkt. 1].  Plaintiff challenges Defendants' handling of two retirement plans - the Charles Stark Draper, Inc. Retirement Plan for Draper Employees ("the Retirement Plan") and the Charles Stark Draper, Inc. Supplemental Retirement Annuity Plan ("the SRAP") (collectively, "the Plans").  Draper is a government contractor and research firm of which Plaintiff was an employee.  Draper is the Plans' sponsor, has the ultimate authority to control and manage the operation and administration of the Plans, and exercises discretionary authority or control with respect to the management and administration of the Plans and disposition of the Plans' assets.  Draper has the power to appoint other fiduciaries of the Plans.

The Board of Directors is Draper's governing body.  A single Investment Policy Statement, applicable to both Plans, provides that "[t]he RPOG is tasked with the responsibility for overseeing the investment of the assets of the Plans as a fiduciary under ERISA.  The members of the RPOG are appointed by the Chief Executive Officer ('CEO') who has the authority to appoint and replace RPOG members as deemed appropriate.  As outlined in the Investment Policy Statement, Draper's CEO has authority to appoint and replace RPOG members "as deemed appropriate."

The Plans are defined contribution or individual account plans.  In the Retirement Plan, a participant's account consists of the sum of the participant's contributions and the employer's matching contributions, while in the SRAP, their account consists solely of participant contributions.  The Plans' participants could invest in several mutual funds.  The Plans offered the same approximately thirty-five investment options, with one exception; the Retirement Plan offers one investment option that the SRAP does not.  Plaintiff alleges that the Plans investing

options underperformed and charged unreasonably high fees, and that Defendants breached their fiduciary duty by failing to monitor the Plans' investments and permitting underperforming investments and high fees. Plaintiff also alleges that Defendants failed to appropriately monitor the Plans' other fiduciaries who were responsible for selecting, administering, and monitoring the Plans.

TIAA was the recordkeeper for the Plans, meaning it performed a set of administrative services for the Plans' participants, such as tracking participants' account balances and sending participant communications. Plaintiff alleges that TIAA charged unreasonable recordkeeping fees, and that TIAA's recordkeeping, along with its provision of investments, were prohibited transactions under ERISA, thereby Defendants' violated ERISA by failing to monitor TIAA and permitting TIAA's prohibited transactions to occur. TIAA also received indirect compensation, which Plaintiff suggested could be from revenue-sharing from non-TIAA investments or fees from TIAA options, but the exact amount and source were not disclosed. Finally, Plaintiff alleges that TIAA received revenue through participant investments in its proprietary funds.

During and after his employment with Draper, Plaintiff participated in the Retirement Plan. Plaintiff did not participate in the SRAP. [Dkt. 23 at 5, 9]. Plaintiff brings this suit on behalf of himself, the Plans, and others who participated in the Plans. Plaintiff brings three counts against Defendants; Count I alleges that Defendants breached their duty of prudence, Count II alleges that Defendants caused the Plans to engage in prohibited transactions, and Count III alleges that Defendants failed to monitor the Plans' other fiduciaries.

Defendants filed a Motion to Dismiss and for a More Definite Statement in which Defendants challenge Plaintiff's constitutional standing, under Rule 12(b)(1), and statutory standing, under Rule 12(b)(6), because Plaintiff is not a participant in the SRAP. [Dkt. 12 at 1].

Further, Defendants move for a more definite statement with respect to Count II arguing that they cannot determine which transactions Plaintiff is challenging. [Id. at 2].

## II.    DISCUSSION

"When faced with motions to dismiss under both [Federal Rules of Civil Procedure] 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995).

### A.    Constitutional Standing

A motion under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Such a motion may present either a facial or a factual challenge. See id. at 363. In assessing a facial challenge, courts credit the plaintiff's well-pleaded jurisdictional allegations, draw all reasonable inferences in the plaintiff's favor, and decide the motion accordingly. Id. For a factual challenge, if the defendant challenges the accuracy of the jurisdictional facts, the allegations are entitled to no presumptive weight, and a court may consider materials submitted by both sides to resolve the disputed jurisdictional facts. Id.

Here, Defendants raise both a facial and factual challenge to Plaintiff's standing. Defendants allege that Plaintiff does not have standing because he did not participate in the SRAP. In support of its factual challenge, Defendants submitted evidence that Plaintiff was never a participant in the SRAP. Defendants did not challenge any other factual assertion in the Complaint. In his opposition, Plaintiff admitted that he was never a SRAP participant. Accordingly, there is no factual disagreement between the parties.

Since federal courts are courts of limited jurisdiction and this court must be assured of its jurisdiction before reaching the merits of Plaintiff's claims, the Court turns first to Defendants' argument that Plaintiff lacks standing. Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020). Courts' "judicial power is limited by Article III of the Constitution to actual cases and controversies" involving plaintiffs who have standing to sue. Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014). Although Defendants are the moving party, Plaintiff, "as the party invoking federal jurisdiction," bears the burden of establishing standing to bring their claims in this court. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

To establish standing, a plaintiff must plausibly allege: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); Webb v. Injured Workers Pharmacy, LLC, 72 F. 4th 365, 372 (1st Cir. 2023). At the pleading stage, general factual allegations may suffice if they plausibly suggest each element of standing, and courts must accept well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. SPARTA Ins. Co. v. Pa. Gen. Ins. Co., 621 F. Supp. 3d 169, 175 (D. Mass. 2022); Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142, 151 (D. Mass. 2011).

In In re Asacol Antitrust Litigation, the First Circuit held that the standing requirement does not "erect any impediment to the named plaintiffs' ability to litigate as class representatives materially identical claims by other persons under the same laws under which the named plaintiffs' claims arise." 907 F.3d 42, 47 (1st Cir. 2018) (citing Gratz v. Bollinger, 539 U.S. 244,

267 (2003)).  The First Circuit has "trained [the] Article III focus in class actions on 'the incentives of the named plaintiffs to adequately litigate issues of importance to them.'" Id. at 48-49 (quoting Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 770 (1st Cir. 2011)).  A named plaintiff's claims do not have to be "in all respects identical to the claims of each class member," because requiring the class representative's claims be identical to those of each class member "would render superfluous the Rule 23 commonality and predominance requirements." Id.  Instead, "the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?" Id. at 49.

Here, Defendants do not challenge Plaintiff's standing to bring a claim related to the Retirement Plan – they only challenge Plaintiff's standing to bring a class action including the SRAP's participants.

Plaintiff has sufficient personal stake in the adjudication of the class members' claims. Plaintiff alleged that "Defendants treated Plaintiff and other Class members consistently and managed the Plans jointly and uniformly as to all Participants. Plaintiff's claims arise out of the same conduct and misconduct by Defendants . . . that form the basis of Class members' claims." [Dkt. 1 ¶ 120].  In Claim I, Plaintiff alleges that Defendants breached their fiduciary duty by failing to monitor the Plans investing options, remove the Plans' investments that were no longer appropriate, and investigate alternatives to TIAA as a recordkeeper.  Claim II alleges that Defendants permitted TIAA to engage in prohibited transactions associated with the Plans. Finally, in Claim III, Plaintiff alleges that Defendants failed to monitor other individuals responsible for monitoring and administering the Plans, failed to monitor the processes by which

the Plans investments were selected and monitored, and failed to remove administrators whose performance was inadequate.

In short, Plaintiff alleges that Defendants engage in uniform practices across the Plans that violate ERISA. Plaintiff has standing to challenge these uniform practices, even though he was not a participant in the SRAP. See In re Biogen, Inc. ERISA Litigation, 20-cv-11325, 2021 WL 3116331, at *4 (D. Mass. July 22, 2021) ("[P]laintiffs can establish constitutional standing to bring representative claims by pointing to injuries to Plan assets."); Velazquez v. Mass. Fin. Servs. Co., 320 F. Supp. 3d 252, 257 (D. Mass. 2018) ("It is well-established that for the purpose of constitutional standing, a plaintiff need not have invested in each fund at issue, but must merely plead an injury implicating defendants' fund management practices."); Waldner v. Natixis Inv. Managers, 21-CV-10273, 2025 WL 1871290, at *19 (plaintiff had standing to bring ERISA class action even though he did not invest in all of the retirement funds at issue). "Importantly," Plaintiff's claims "parallel those of the putative class members in the sense that, assuming a proper class is certified, success on the [named plaintiffs' claims] will more or less dictate success [on the putative class members' claims]." In re Asacol, 907 F.3d at 49. Accordingly, Plaintiff has standing to bring this action and Defendant's Motion to Dismiss under Rule 12(b)(1) is denied.

**B.    Statutory Standing**

In addition to constitutional standing, Defendants argue that Plaintiff does not have statutory standing to sue because he was not a participant of the SRAP. Challenges to a plaintiff's statutory standing are assessed under Rule 12(b)(6) standards because statutory standing goes to the merits of the claim. Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 44 (1st Cir. 2020). Under Rule 12(b)(6), courts undertake a context-specific, two-step inquiry

where they (1) separate factual allegations from conclusory legal statements, accepting the former as true and disregarding the latter, then (2) determine whether the well-pleaded facts permit a reasonable inference that the defendant is liable for the misconduct alleged. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). Thus, a plaintiff lacks statutory standing when the complaint fails to plausibly allege that they have statutory standing. Vander Luitgaren v. Sun Life Assur. Co. of Can., 765 F.3d 59, 62 (1st Cir. 2014).

A plaintiff has statutory standing when they fall "within the class of plaintiffs whom Congress has authorized to sue." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 (2014). This analysis is a matter of "statutory interpretation" that asks, "whether Congress has accorded this injured plaintiff the right to sue the defendant [under the particular statute] to redress his injury." Vander Luitgaren, 765 F.3d at 62 (emphasis omitted).

Plaintiff brings this action under 29 U.S.C.A. § 1132(a)(2) and (3). Both provisions permit "participant[s]" to bring civil actions. Under ERISA, "participant" is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C.A. § 1002(7). Plaintiff clearly has alleged facts to support that he is a "participant" in the Retirement Plan. The Complaint also alleges facts that the rest of the class members are "participant[s]" of the Retirement Plan and SRAP. Congress further gave Plaintiff the right to sue on the class's behalf in Federal Rule of Civil Procedure, through the Rules Enabling Act. 28 U.S. Code § 2072. Accordingly, Plaintiff has statutory standing to sue on his own behalf and on behalf of the class members.

"Congress has accorded [Plaintiff] the right to sue the defendant [under the ERISA] to redress his injury," even though he was not a SRAP participant. Vander Luitgaren, 765 F.3d at 62. See In re MOVEit Consumer Data Sec. Breach Litig., 23-md-3083, Dkt. 1517 at 45-46 (D. Mass. July 31, 2025) (plaintiffs had statutory standing where none of the plaintiffs were residents of some of the states whose laws the suit was brought under).  The First Circuit's logic in In re Asacol Antitrust Litigation extends to statutory standing.  Requiring a named plaintiff to have identical claims as other class members "would render superfluous the Rule 23 commonality and predominance requirements." In re Asacol, 907 F.3d at 49.  Therefore, Defendants' Motion to Dismiss under Rule 12(b)(6) is denied.

### C.    Motion for More Definite Statement

Defendants filed a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e) arguing that Plaintiff has not sufficiently identified the prohibited transactions that Defendants are alleged to have permitted.  According to Rule 12(e), "a party may move for a more definite statement [i]f a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Hilchey v. City of Haverhill, 233 F.R.D. 67, 69 (D. Mass. 2005).  Rule 12(e) motions are "disfavored 'in light of the availability of pretrial discovery procedures,'" and should only be granted where the pleadings are "unintelligibl[e]," not merely were they lack detail. Castillo v. SEIU 32BJ New England, 20-CV-11220-ADB, 2020 WL 5237698, at *1 (D. Mass. Sep. 2, 2020) (citations omitted).  Although disfavored, Rule 12(e) motions are also "appropriate when a plaintiff has crafted a 'shotgun pleading' making it difficult or impossible to know which factual

allegations in a pleading are intended to support which claims for legal relief." <u>MacKenzie v. Pfizer, Inc.</u>, 20-11550-NMG, 2021 WL 7451166, at *4 (D. Mass. Jan. 11, 2021).

Plaintiff identifies "contract[s] for services, like recordkeeping and the provisions of investments, from service providers like TIAA" as prohibited transactions for which Defendants are responsible. [Dkt. 1 ¶ 50].  Although Plaintiff suggests that Defendants may have permitted additional prohibited transactions, these suggests do not amount to "shotgun pleading."  Plaintiff need not plead with greater specificity under ERISA. <u>See</u> <u>Cunningham v. Cornell Univ.</u>, 604 U.S. 693, 700 (2025) ("[U]nder § 1106(a)(1)(C), plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim.").  Therefore, Defendants' Motion for a More Definite Statement is denied.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and for More Definite Statement [Dkt. 11] is **DENIED**.

**SO ORDERED.**

Dated: February 17, 2026                    /s/ Angel Kelley_____
                                            Hon. Angel Kelley
                                            United States District Judge